## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## ERIE DIVISION

| | |
|---|---|
| SCOTT ACHARD and SHAWN THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST BANK, N.A.,<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Scott Achard ("Achard") and Shawn Thomas ("Thomas") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action complaint against Northwest Bank, N.A. ("Northwest Bank" or "Defendant"). Plaintiffs make the following allegations based upon, *inter alia*, the investigation made by their counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiffs which are based on their personal knowledge and allege the following:

### NATURE OF THE ACTION

1.      This is a proposed class action arising from Northwest Bank's unfair and unconscionable assessment of: (a) monthly paper statement fees ("Paper Statement Fees"); and (b) multiple fees on an item.

2.      Northwest Bank's Paper Statement Fees violate federal and state law for two reasons. Northwest Bank may not pass to consumers its own costs of compliance with federal law. Consumers have the unequivocal right to receive periodic bank statements under federal law.

1

Northwest Bank impedes and hinders that right by charging a fee for its own compliance with federal law.

3.    The Electronic Fund Transfer Act ("EFTA"), Regulation E and the Electronic Signatures in Global and National Commerce Act ("E-Sign Act") together give consumers a right to paper periodic statements unless consumers affirmatively choose to receive statements electronically.

4.    Under Regulation E, financial institutions are required by law to give consumers access to their periodic bank statements. 12 CFR § 1005.9(b). Those periodic statements must include, *inter alia*, transaction information, the account number, the account balance at the beginning and the close of the statement period, the amount of fees assessed against the account during the statement period, and the address and telephone number of the bank. *Id*.

5.    Those "periodic statements" must be in writing and must not be provided electronically unless the consumer affirmatively consents to receiving statements electronically in a manner consistent with the E-Sign Act. *See* 12 C.F.R. § 1005.4; 15 U.S.C. 7001 *et seq*.

6.    In other words, consumers have a federal right to receive periodic statements, and they have a federal right to choose how they would like to receive those statements:  on paper or electronically.

7.    Providing consumers with a choice of how they would like to receive their statements is important for reasons beyond convenience. As the National Consumer Law Center pointed out in a recent study analyzing the impact of paper statement fees, "Consumers who see their statements are more likely to notice if they have been subject to fees or charges they did not

authorize or expect, or that were far more expensive than anticipated." Thus, it is important that consumers "be able to receive statements in the form that is most convenient for them."[1]

8.      By charging Paper Statement Fees on all consumers who receive paper statements, Northwest Bank impedes, hinders, and deters the right of consumers to receive paper statements.

9.      Northwest Bank's practices violate the EFTA, 15 U.S.C. §§ 1693d(c) and 1693l, Regulation E. Moreover, even assuming, *arguendo*, the provisions in Northwest Bank's deposit agreement with Plaintiffs authorize such practices, those provisions violate the EFTA and are invalid and unenforceable.

10.     Northwest Bank misleadingly and deceptively misrepresents its fee practices including, upon information and belief, in its take-it-or-leave-it form adhesion contracts with consumers.

11.     For both of these reasons, this lawsuit challenges Northwest Bank's practice of assessing its accountholders Paper Statement Fees and multiple fees on the same item.

12.     Plaintiffs, individually and on behalf of all those similarly situated, seek (1) public injunctive relief to enjoin Northwest Bank from continuing to assess Paper Statement Fees and multiple fees on the same item, (2) actual and proximate damages, statutory damages, costs, and attorneys' fees, and (3) a declaration that the provisions of the deposit agreement authorizing Paper Statement Fees violates the EFTA and Regulation E and are not enforceable.

---

[1] Chi Chi Wu and Lauren Saunders, "Paper Statements: An Important Consumer Protection," National Consumer Law Center, March 2016, available at: http://www.nclc.org/images/pdf/banking_and_payment_systems/paper-statements-banking-protections.pdf.

**PARTIES**

13.     Plaintiff Achard is a resident and citizen of Buffalo, New York. At all material times, Achard maintained a checking account with Northwest Bank.

14.     Plaintiff Thomas is a resident and citizen of North Tonawanda, New York. At all material times, Thomas maintained a checking account with Northwest Bank.

15.     Defendant Northwest Bank is a bank with over $14 billion in assets. It is headquartered in Warren, Pennsylvania and has 180 branches across New York, Ohio, Pennsylvania and Indiana.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Classes are comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff and one defendant.

17.     The Court has personal jurisdiction over Defendant because it maintains its headquarters in this district. As such, Defendant maintains minimum contacts with Pennsylvania such that an exercise of personal jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Northwest Bank is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.** **Northwest Bank MAY NOT CHARGE A FEE FOR A RIGHT PROVIDED BY FEDERAL LAW**

**A.** **Consumers have the right to receive paper statements**

19.    Congress enacted the EFTA in 1978 with the "primary objective" to provide for individual consumer rights with respect to electronic fund and remittance transfers. 15 U.S.C. § 1693.

20.    Under the EFTA, financial institutions are required to provide a consumer with a "periodic statement for each account of such consumer that may be accessed by means of an electronic fund transfer." 15 U.S.C. §§ 1693d(c).

21.    Regulation E, which implements the EFTA, likewise provides, "[f]or an account to or from which electronic fund transfers can be made, a financial institution shall send a periodic statement for each monthly cycle in which an electronic fund transfer has occurred; and shall send a periodic statement at least quarterly if no transfer has occurred."12 CFR § 1005.9(b).

22.    Those periodic statements must include, *inter alia*, transaction information, the account number, the account balance at the beginning and the close of the statement period, the amount of fees assessed against the account during the statement period, and the address and telephone number of the bank. *Id*.

23.    These periodic statements must be provided "in writing" unless a consumer consents to receive statements electronically, in a manner consistent with the E-Sign Act. *See* 12 CFR § 1005.4.

24.    Thus, consumers generally have the right to receive paper statements under federal law, unless they affirmatively consent to electronic statements.

25.    Moreover, the rights and protections of the EFTA are not waivable. "No writing or

other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by [the EFTA]." 15 U.S.C. § 16931.

**B.    Northwest Bank's Paper Statement Fees Hinder and Impede Consumers' Federal Right to Receive Paper Statements.**

26.    Northwest Bank charges many accountholders a $3.00 monthly paper statement fee in order to receive the periodic paper statements to which they are entitled under federal law.

27.    From a policy perspective, this is problematic for many reasons. First, as outlined in a report by the National Consumer Law Center, electronic statements are not for everyone. Banks must not use fees to coerce consumers into electronic statements.

> Electronic statements sound eco-friendly, but they are not for everyone. Bank account, credit card and mortgage statements provide important information and serve a critical consumer protection function. Consumers must have the right to receive that information in the manner that works for them. For many consumers, from those without regular broadband Internet access to the most computer savvy, paper is a more reliable way of ensuring that the consumer actually sees the information and can retain important records. Paper statements must be available for free for consumers who want them, and consumers should not be coerced into electronic statements[.][2]

28.    Because bank statements are an important safeguard to deter unscrupulous conduct, consumers must not be forced to accept statements in a form they do not want. According to the NCLC report, "The important functions of statements should not be sacrificed by pushing consumers into electronic statements if that means that they are less likely to see or be able to easily access the information they need." *Id.*

---

[2] Chi Chi Wu and Lauren Saunders, "Paper Statements: An Important Consumer Protection," National Consumer Law Center, March 2016, available at: http://www.nclc.org/images/pdf/banking_and_payment_systems/paper-statements-banking-protections.pdf.

29.     Moreover, for many Americans, electronic statements are not a realistic option. "Millions of Americans are on the other side of the 'digital divide': They lack meaningful access to broadband Internet at home[.]" *Id.* For these consumers, it is all the more important that they not be forced to accept electronic statements, or be charged fees to receive statements in the only way they are able to review them.

30.     Unfortunately, many financial institutions, like Northwest Bank, "are aggressively pushing consumers into electronic statements, using tactics that are questionable and arguably illegal. Financial institutions have an incentive to convert consumers into electronic statements to save on the costs of printing and postage." *Id.*

31.     Northwest Bank has done exactly that. In an effort to profit off of complying with its statutory duty to send statements, Northwest Bank charges Paper Statement Fees to all consumers who do not affirmatively choose to receive electronic statements.

32.     Northwest Bank's Paper Statement Fees are an obstacle to consumers' receiving the statements to which they are entitled by federal law. Simply put, Northwest Bank may not charge such a fee to consumers who are unable or unwilling to view their bank statements on an electronic device.

33.     Northwest Bank's Paper Statement Fees hinder consumers' rights to review their periodic statements and provides a significant and unjustified revenue source for Northwest Bank doing nothing more than performing its statutory duty.

34.     Northwest Bank imposes Paper Statement Fees by way of a provision in its fee schedule. This provision impedes, hinders, and deters consumers from exercising their EFTA and Regulation right to receive periodic statements in writing. This provision in the fee schedule violates the EFTA and Regulation E and is unenforceable.

35.     Achard and Northwest Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Northwest Bank's deposit agreement and related documentation.

36.     In Northwest Bank's fee schedule, Northwest Bank states:

Paper Statements                        $3*

*Waived if an owner on Affinity Premier or Signature Checking Account

37.     These provisions authorizing Paper Statement Fees impede, hinder, or deter consumers from exercising their federal right to receive periodic statements in writing.

38.     These contractual provisions violate 15 U.S.C. § 1693l. This statute "prohibits agreements that preclude consumers from exercising rights conferred under EFTA," and "the use of such an agreement by any party is an actionable violation." *Simone v. M & M Fitness LLC*, CV-16-01229-PHX-JJT, 2017 WL 1318012, at *2 (D. Ariz. Apr. 10, 2017). Even if an agreement does not explicitly bar consumers from receiving their periodic statements in writing, an agreement violates § 1693l if it "hinder[s] consumers' ability to exercise their rights as Congress intended" under the EFTA, because the EFTA "precludes such hindrance—no matter how slight—and does not expressly require a showing of specific harm." *Id.* at *3.

**C.     Plaintiff Achard's Experience**

39.     From 2019 through 2022, Archard was charged Paper Statement Fees by Northwest Bank.

## II.     DEFENDANT ASSESSES TWO OR MORE FEES ON THE SAME ITEM RETURNED FOR INSUFFICIENT FUNDS

40.     Northwest Bank unlawfully maximizes its profitable fees scheme through the deceptive and contractually-prohibited practice of charging multiple nonsufficient fund fees ("NSF Fees"), or an NSF Fee followed by an overdraft fee, on an item.

41.    Unbeknownst to consumers, when Northwest Bank reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Northwest Bank chooses to treat it as a new and unique item that is subject to yet another fee. But the consumer's contract with Northwest Bank never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

42.    The Federal Deposit Insurance Corporation ("FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

43.    In the latest issue of the CFPB's Supervisory Highlight, the Bureau scrutinized junk fees, including the practice of charging multiple NSF fees, stating:

> Supervision found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's accounts, potentially as soon as the next day. The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition.

Consumer Financial Protection Bureau, "Supervisory Highlights Junk Fees Special Edition" (March 2023).

44.    This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

45.     Upon information and belief, the contract allows Northwest Bank to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Northwest Bank may (a) pay the item and charge a $37 fee; or (b) reject the item and charge a $37 fee.

46.     In contrast to the Contract, however, Northwest Bank regularly assesses two or more $37 fees on an item.

**A.     The Imposition of Multiple Fees on a Single Item Violates Defendant's Express Promises and Representations**

47.     On information and belief, at the time Thomas incurred multiple fees on the same item, Northwest Bank's account contract promised that a single fee will be assessed on an item.

48.     The same "item" on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

49.     There is zero indication anywhere in the contract that the same "item" is eligible to incur multiple fees.

50.     Even if Northwest Bank reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

51.     The contract never discusses a circumstance where Northwest Bank may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

52.     In sum, upon information and belief, Northwest Bank promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Northwest breached the contract when it charged more than one fee per item.

53.     Reasonable consumers understand any given authorization for payment to be one, singular "item."

54.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Northwest will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.

55.     Nowhere do Northwest Bank and its customers agree that Northwest Bank will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

56.     Customers reasonably understand that Northwest Bank's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

57.     Banks and credit unions, like Northwest Bank, that employ this abusive practice require their accountholders to expressly agree to it—something Northwest Bank here did not do.

58.     For instance, Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

59.     Northwest Bank's contract provides no such authorization, and actually promises the opposite— Northwest Bank may charge, at most, a fee, per item.

**B.    Plaintiff Thomas's Experience**

60.    Thomas offers an example of fees that should not have been assessed against his checking account. As alleged below, Northwest Bank: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

61.    In and prior to June 2022, Thomas was assessed multiple fees on an item. The transactions was specifically labeled "RETRY PYMT." Thomas understood the payment to be a single item as is laid out in the contract, capable of receiving, at most, a single fee if Northwest Bank returned it, or a single fee if Northwest Bank paid it.

62.    The improper fees charged by Northwest Bank to Thomas' account were not errors, but rather were intentional charges made by Northwest Bank as part of its standard processing of transactions.

63.    Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Northwest Bank's standard practices.

64.    Moreover, any such reporting would have been futile as Northwest Bank's own contract admits that Northwest Bank made a decision to charge the fees.

**III.    THE IMPOSITION OF THESE IMPROPER FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING**

65.    Parties to a contract are required not only to adhere to the express conditions of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor

transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

66.     Here—in the adhesion agreements Northwest Bank foisted on Plaintiff and its other customers—Northwest Bank has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Northwest Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

67.     Northwest Bank violated the covenant of good faith and fair dealing by abusing its discretion in its own favor—to the prejudice of Plaintiff and its other customers—when it assessed fees in this manner. Indeed, though this practice, Northwest Bank uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations. Stated differently, Northwest Bank uses its contractual discretion to set the meaning of those terms to directly cause more fees to its consumers.

## CLASS ALLEGATIONS

68.     Plaintiffs brings this action individually and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

Paper Statement Fee Class: All accountholders of a Northwest Bank checking account who, within the applicable statute of limitations, paid one or more Paper Statement Fees (represented by Plaintiff Achard).

Multiple Fee Class: All accountholders of a Northwest Bank checking account who, within the applicable statute of limitations, paid multiple fees on the same item (represented by Plaintiff Thomas).

69.     Collectively, the Paper Statement Fee Class and Multiple Fee Class shall be referred

to as the "Classes."

70.    Excluded from the Classes are Northwest Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Northwest Bank has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Northwest Bank's records.

72.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes. The questions of law and fact common to the Classes include, but are not limited to, the following:

a.    Whether Northwest Bank improperly assessed Paper Statement Fees;

b.    Whether Northwest Bank improperly assessed multiple fees on the same item;

c.    Whether Northwest Bank's assessment of Paper Statement Fees violated the EFTA;

d.    Whether Northwest Bank's assessment of multiple fees on the same item breached the contract;

e.    Whether Plaintiffs and the Classes are entitled to damages; and

f.    Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

73.    Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful Paper Statement Fee and multiple fee policies and practices. Plaintiffs have suffered the same harm alleged and has no interests antagonistic to the interests of

any other member of the Classes. Furthermore, the factual basis of Northwest Bank's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Northwest Bank has no unique defenses that would apply to Plaintiffs and not the Classes.

74.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

75.     A class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the comparatively modest amount of monetary relief available for each individual Class member. Moreover, prosecution of separate actions by individual Class members would create a risk inconsistent or contradictory judgments, lead to the duplication of evidence, effort, and expense, and unnecessarily overwhelm the court system. The benefits of class treatment, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

76.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

77.     Northwest Bank has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to each Classes as a whole.

78.     All conditions precedent to bringing this action have been satisfied and/or waived.

## COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1693d(c)
### (On behalf of Plaintiff Achard and the Paper Statement Fee Class)

79.     Plaintiff Archard repeats, realleges, and incorporates the allegations in Paragraphs 1-78 as if fully set forth herein.

80.     As alleged above, Achard and the putative class members wished to receive periodic statements, as is their right under the EFTA.

81.     In violation of 15 U.S.C. § 1693d(c), and as a common practice, Northwest Bank assesses a $3 Paper Statement Fee when it sends consumers the periodic statements they are entitled to under the EFTA.

82.     As a result of these violations, Achard and the putative class members suffered concrete and particularized harms in the form of illegal fees.

83.     Northwest Bank's noncompliance with 15 U.S.C. § 1693d(c) is intentional in part, as these practices impede, hinder, and deter a consumer's right to receive periodic statements.

84.     Accordingly, Northwest Bank is liable to Achard and the class members for any actual damages, statutory damages, attorney's fees, and costs. 15 U.S.C. § 1693m.

85.     In addition, pursuant to 28 U.S.C. § 2201, Achard is entitled to, and seeks, a judicial declaration that Northwest Bank's policy of charging Paper Statement Fees violates the EFTA and 15 U.S.C. § 1693d(c), and thus Achard is further entitled to, and seek, an injunction enjoining Northwest Bank from charging Paper Statement Fees.

**COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1693l**
**(On behalf of the Plaintiff Achard and the Paper Statement Fee Class)**

86.      Plaintiffs Archard repeats, realleges, and incorporates the allegations in Paragraphs 1-78 as if fully set forth herein.

87.      Northwest Bank's repeated enforcement of the contractual provisions discussed above—including the provisions imposing a $3 Paper Statement Fee—violates 15 U.S.C. § 1693l because  Northwest Bank impedes, hinders, and deters consumers from exercising their EFTA right to receive periodic statements.

88.      As a result of these violations, Achard and the putative class members suffered concrete and particularized harms in the form of illegal fees.

89.      Northwest Bank's noncompliance with 15 U.S.C. § 1693l is intentional in part, as these practices impede, hinder, and deter a consumer's right to stop payment.

90.      Accordingly,  Northwest Bank is liable to Achard and the class members for any actual damages, statutory damages, attorney's fees, and costs. 15 U.S.C. § 1693m.

91.      In addition, pursuant to 28 U.S.C. § 2201, Achard is entitled to, and seeks, a judicial declaration that  Northwest Bank's deposit agreement violates the EFTA and 15 U.S.C. § 1693l, and thus Achard is further entitled to, and seeks, an injunction enjoining  Northwest Bank from continued enforcement of these contractual provisions.

**COUNT THREE:  BREACH OF CONTRACT INCLUDING BREACH OF THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff Thomas and the Multiple Fee Class)**

92.      Thomas repeats, realleges, and incorporates the allegations in Paragraphs 1-78 as if fully set forth herein.

93.      Thomas and Northwest Bank have contracted for bank account deposit, checking, ATM, and debit card services.

94.    Northwest Bank mischaracterized in the contract its true fee practices.

95.    No Contract provision authorizes Northwest Bank to charge multiple fees on an item. Thus, Northwest Bank breached its contract by charging Thomas multiple fees on an item.

96.    Under Pennsylvania law, the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions.

97.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

98.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

99.    Northwest Bank has breached the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

100.    Northwest Bank harms consumers by abusing its contractual discretion in a way that no reasonable customer could anticipate.

101.    Thomas and members of the Multiple Fee Class have performed all, or substantially all, of the obligations imposed on them by the contract.

102.    Thomas and members of the Multiple Fee Class have sustained damages as a result of Northwest Bank's breach of the contract and breach of the covenant of good faith and fair dealing.

## COUNT FOUR: UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Classes)

103.    Plaintiffs repeat, reallege, and incorporate the allegations in Paragraphs 1-78 as if fully set forth herein.

104.    Plaintiffs, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiffs' breach of contract claim (Count III) and applies only if the parties' contract is deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Northwest Bank disgorge all improperly assessed fees.

105.    By means of Northwest Bank's wrongful conduct alleged herein, Northwest Bank knowingly assessed fees upon Plaintiffs and the members of the Classes that are unfair, unconscionable, and oppressive.

106.    Northwest Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and the members of the Classes. In so doing, Northwest Bank acted with conscious disregard for the rights of Plaintiffs and the members of the Classes.

107.    As a result of Northwest Bank's wrongful conduct as alleged herein, Northwest Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the members of the Classes.

108.    Northwest Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

109.    Under the common law doctrine of unjust enrichment, it is inequitable for Northwest Bank to retain the benefits it received, and is still receiving, without justification, from the imposition of Paper Statement Fees and multiple fees on an item on Plaintiffs and members of the Classes in an unfair, unconscionable, and oppressive manner. Northwest Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

110.    The financial benefits derived by Northwest Bank rightfully belong to Plaintiffs and the members of the Classes. Northwest Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds collected by Northwest Bank. A constructive trust should be imposed upon all wrongful or inequitable sums received by Northwest Bank traceable to Plaintiffs and the members of the Classes.

111.    Plaintiffs and the members of the Classes have no adequate remedy at law.

## COUNT FIVE: VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Penn. Stat.Ann. §§ 201-1, et seq.
**(On Behalf of Plaintiffs and the Classes)**

112.    Plaintiffs repeat, reallege, and incorporate the allegations in Paragraphs 1-78 as if fully set forth herein.

113.    The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is to protect the public from fraud and unfair and deceptive business practices. The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by the UTPCPL." 73 P.S. § 201-9.2(a).

114.    This is a claim for violations of the UTPCPL, 73 P.S. § 201-2(xxi), which states, that unfair or deceptive acts or practices mean any one or more of the following: "Engaging in other fraudulent or deceptive conduct which creates the likelihood of confusion or misunderstanding." *Id.*

115.    At all times relevant hereto, Northwest Bank conducted trade and commerce within the meaning of the UTCPL.

116.    Plaintiffs and the Classes are "persons" as defined under the UTPCPL.

117.    Northwest Bank has made and continues to make deceptive, false and misleading statements to accountholders, including Plaintiff and the Class, by falsely indicating in account documents that it will charge a single NSF or OD Fee per item and by charging Paper Statement Fees against consumers' rights under federal law.

118.    The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by § 201-2 of the Unfair Trade Practices and Consumer Protection Law, including, but not limited to, the following:

a.    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (§ 201-2(4)(v));

b.    "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (§ 201-2(4)(vii));

c.    "advertising goods or services with intent not to sell them as advertised" (§ 201-2(4)(ix)); and

d.    "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" (§ 201-2(4)(xxi)).

119.    Plaintiffs and the Classes relied upon Northwest Bank's deceptive, false and

misleading representations in choosing to bank with Northwest Bank.

120.    Northwest Bank's conduct as set forth herein constitutes an unconscionable commercial practice comprised of deceptive acts or practices in violation of 73 P.S. § 201-2(xxi).

121.    As a direct and proximate result of defendants' unfair and deceptive acts or practices, Plaintiffs and the Classes have been injured, and suffered and will continue to suffer real damages.

122.    As a result of the harm caused by Northwest Bank's violation of the UTPCPL, Plaintiffs and the Classes are entitled to recover compensatory damages, punitive damages, treble damages, and an award of attorneys' fees and costs, pursuant to 73 P.S. § 201-9.2(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

1.    An order declaring Northwest Bank's policies and practices as described herein to be wrongful, unfair, and unconscionable;

2.    An order enjoining Northwest Bank from continuing to engage in the acts and practices described herein;

3.    Restitution of all amounts paid to Northwest Bank by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.    Disgorgement of the ill-gotten gains derived by Northwest Bank from its misconduct;

5.    Actual damages in an amount according to proof;

6.    Treble damages pursuant to applicable law and in an amount according to proof;

7.      Punitive and exemplary damages;

8.      Pre-judgment interest at the maximum rate permitted by applicable law;

9.      Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class members hereby demand a jury on all claims so triable.

Date: August 8, 2024               Respectfully submitted,

                                      **LYNCH CARPENTER LLP**

By:      */s/ Gary F. Lynch*
          GARY F. LYNCH
          PA ID No.: 56887
          1133 Penn Avenue, 5th Floor
          Pittsburgh, PA  15222
          (412) 322-9243
          gary@lcllp.com

          Jonathan M. Jagher
          **FREED KANNER LONDON & MILLEN**
          923 Fayette Street
          Conshohocken, PA 19428
          (610) 234-6770
          jjagher@fklmlaw.com

          Jeffrey D. Kaliel*
          Sophia G. Gold*
          **KALIELGOLD PLLC**
          1100 15th Street NW, 4th Floor
          Washington, D.C.  20005
          (202) 350-4783
          jkaliel@kalielgold.com
          sgold@kalielgold.com

Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

Counsel for Plaintiffs and the Proposed Classes

*\* pro hac vice forthcoming*